**State of UTAH, Plaintiff,**

v.

**ELI LILLY AND COMPANY, Defendant.**

**No. 2:07–CV–380 TS.**

United States District Court, D. Utah, Central Division.

Sept. 4, 2007.

---

**1018**

David R. Stallard, Utah Attorney General's Office, Joseph W. Steele, Kenneth D. Lougee, Siegfried & Jensen, Murray, UT, for Plaintiff.

John W. MacKay, Rick L. Rose, Ray Quinney & Nebeker, Salt Lake City, UT, for Defendant.

**MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO STAY AND GRANTING PLAINTIFF'S MOTION TO REMAND**

TED STEWART; District Judge.

This matter is before the Court on Defendant's Motion to Stay[1] and Plaintiff's Motion to Remand.[2]

## I. INTRODUCTION

This action is based on allegations by the State of Utah ("Plaintiff") that, as a result of actions and inactions by Eli Lilly & Co. ("Defendant"), Medicaid funds were improperly dispersed to Utah Medicaid participants and suppliers for the use of Defendant's drug, Zyprexa. This action was originally filed in the Third Judicial District Court of the State of Utah on May 29, 2007, and subsequently removed to this Court on June 11, 2007.

Plaintiff specifically alleges that it has paid for inappropriate, unnecessary, and unauthorized off-label prescriptions for Zyprexa. Plaintiff seeks to recover these amounts under Utah law, according to 42 U.S.C. § 1396a(a)(25), which mandates states to take such actions. Plaintiff also seeks to recover the future costs of care for Medicaid recipients allegedly rendered chronically ill or injured by Zyprexa's undisclosed side effects. Plaintiff brings a claim under the Utah False Claims Act,[3] and several claims based on theories of product liability, fraud and negligent misrepresentation, negligence, breach of warranty, and pattern of unlawful activity under Utah Code Ann. §§ 76–10–1601 et seq.

Defendant states that it will request that the Judicial Panel on Multidistrict Litigation ("JPML") transfer this case to an

---

1. Docket No. 2.

2. Docket No. 6.

3. Utah Code Ann. §§ 26–20–1 et seq.

already-established Zyprexa Multidistrict Litigation ("MDL") pursuant to 28 U.S.C. § 1407(a). Defendant moves for this Court to stay the case pending its transfer to the JPML. Plaintiff opposes such a stay, and argues that there is no federal subject matter jurisdiction for this action. Accordingly, Plaintiff moves for remand.

## II. DISCUSSION

### A. Defendant's Motion to Stay

■ Defendant generally argues that a stay would promote judicial efficiency by facilitating global resolution of issues by the MDL, as opposed to the potential result of disparate rulings among various jurisdictions on identical issues. Defendant further argues that hardship would result to it if it were required to litigate similar issues in separate forums.

■ Plaintiff argues that judicial efficiency is best promoted by promptly resolving the jurisdictional issue raised by its Motion to Remand. Plaintiff also argues that the risk of inconsistent rulings is a non-issue because a number of inconsistent rulings already exist as to identical jurisdictional issues in similar cases.[4]

It is well settled that the district court has the power to stay proceedings pending before it and to control its docket for the purpose of "economy of time and effort for itself, for counsel, and for litigants." The granting of the stay ordinarily lies within the discretion of the district court.[5]

Also, "[i]n exercising its judgment, the Court must weigh competing interests and consider the effects of the stay on the Court's docket, on counsel, and on the litigants."[6]

The Court is persuaded that Defendant's Motion to Stay should be denied and that the jurisdictional issue raised by Plaintiff takes priority, and should be addressed for several reasons. First, and foremost, "[i]t is a principle of first importance that the federal courts are courts of limited jurisdiction."[7] The Court acknowledges that some authority indicates that "[t]he general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the JPMDL has transferred the case to the MDL panel."[8] However, the Court notes that, as of now, this action is not properly characterized as MDL litigation, but merely *proposed* as potential MDL litigation.[9] Even if it were properly characterized as MDL litigation, there are instances where federal courts have applied a rule contrary to the so-called general rule, and more importantly, this has happened in at least one case with

**4.** *See infra* note 12.

**5.** *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir.1963) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)); *see also Mediware Info Sys., Inc. v. McKesson Info. Solutions, LLC*, No. 06–2391, 2007 WL 473700 (D.Kan. Feb.9, 2007) (same; citing *Pet Milk Co.*, 323 F.2d at 588).

**6.** *Crown Cent. Petroleum Corp. v. Dept. of Energy*, 102 F.R.D. 95, 98–99 (D.Md.1984). (citing *Landis*, 299 U.S. at 254–55, 57 S.Ct. 163).

**7.** *13 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure* § 3522.

**8.** *North v. Merck & Co.*, No. 05–CV–6475L, 2005 WL 2921638, at *1 (W.D.N.Y. Nov.4, 2005) (quoting *Jackson v. Johnson & Johnson, Inc.*, No. 01–2113 DA, 2001 WL 34048067, at *6 (W.D.Tenn. Apr.3, 2001) (citing *In re Ivy*, 901 F.2d 7 (2d Cir.1990))).

**9.** The Court notes the absence in the docket of any request by Defendant to the JPML. *See* 28 U.S.C. § 1407(c)(ii) and R.P. JPML 5.12 (requiring filing of any MDL paper with the district court).

issues nearly identical those before the Court in this action.[10]

Second, the Rules of Procedure for the JPML specifically allow for the resolution of jurisdictional issues such as this one in the district court even where motions for the action are already pending before the MDL Panel.[11] Addressing Plaintiff's Motion to Remand is even more justified here, where the case is not yet properly MDL litigation and nothing from the case is pending before the MDL.

Third, the Court notes that staying this action and allowing transfer, for all intents and purposes, decides the jurisdictional issue against Plaintiff, whereas a growing number of federal district courts are fording that subject matter jurisdiction does not exist in a case such as this.[12] Given such circumstances, the Court finds that addressing the jurisdictional question is the more appropriate course of action.

For the foregoing reasons, and after having considered the competing interests and effects of a stay on the Court's docket, on counsel, and on the litigants, the Court will deny Defendant's Motion to Stay and address Plaintiff's Motion to Remand.

### B. Plaintiff's Motion to Remand

Defendant removed this action by asserting two grounds for federal subject matter jurisdiction: (1) substantial federal question jurisdiction under 28 U.S.C. § 1331 and (2) preemption. Plaintiff argues that subject matter jurisdiction does not exist under either ground.

■ "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction. The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."[13] "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[14] Importantly, "doubtful cases must be resolved in favor of remand."[15]

■ A case arises under federal law if "a well-pleaded complaint establishes either that the federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[16] The parties here focus their arguments on whether there is a substantial question of federal law. Also, "[u]nder the 'complete

---

**10.** *E.g. Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F.Supp.2d 576, 578–79, 2007 WL 1876531, at *1 (E.D. Pa.2007); *see also Johnson v. Micron Technology, Inc.*, 354 F.Supp.2d 736, 739 (E.D.Mich.2005) (adopting contrary rule and quoting *Tortola Restaurants, L.P. v. Kimberly–Clark Corp.*, 987 F.Supp. 1186, 1189 (N.D.Cal.1997)) (same and quoting *Spitzfaden v. Dow Corning Corp.*, No. 95–2578, 1995 WL 662663, at *4 n. 1 (E.D.La. Nov.8, 1995)).

**11.** R.P. JPML 1.5.

**12.** *Compare South Carolina v. Eli Lilly & Co.*, No. 7:07–1875–HMH, Docket No. 16, at 5–6 (unpublished Order); *Pennsylvania*, No. 07–1083, 2007 WL 1876531, at *9; *Alaska v. Eli Lilly & Co.*, No. 3:06–CV–88 TMB, 2006 WL 2168831, at *4 (D.Alaska July 28, 2006); *and Texas v. Merck & Co., Inc.*, 385 F.Supp.2d 604, 608 (W.D.Texas 2005) (finding lack of

subject matter jurisdiction) *with In re Zyprexa Products Liability Litigation II*, Nos. 04–MD–1596, 07–CV–645, 2007 WL 1601482, at *1 (E.D.N.Y. June 5, 2007); *West Virginia v. Eli Lilly & Co.*, 476 F.Supp.2d 230, 234 (E.D.N.Y. 2007); *and In re Zyprexa Products Liability Litigation I*, 375 F.Supp.2d 170, 173 (E.D.N.Y.2005) (finding subject matter jurisdiction).

**13.** *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir.2002).

**14.** 28 U.S.C. 1447(c).

**15.** *Archuleta v. Lacuesta*, 131 F.3d 1359, 1370 (10th Cir.1997).

**16.** *Empire Healthchoice Assurance, Inc., v. McVeigh*, —— U.S. ——, 126 S.Ct. 2121, 2131, 165 L.Ed.2d 131 (2006).

preemption doctrine,' federal courts may exercise federal question jurisdiction over complaints that, although not presenting federal questions on their face, nonetheless present state law claims that are preempted by federal law." [17]

### 1. Substantial Question of Federal Law

■ Defendant asserts, and Plaintiff disputes, that this action involves substantial questions of federal law. "The Supreme Court has long recognized that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues or 'turn on substantial questions of federal law.'" [18] However, this is a "slim category" and "it takes more than a federal element to open the 'arising under' door." [19] "[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto" if federal jurisdiction is not "consistent with congressional judgment about the sound division of labor between state and federal courts." [20] Ultimately, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." [21]

The Court notes that the Supreme Court cases *Merrell Dow Pharmaceuticals Inc. v. Thompson,*[22] *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,*[23] and *Empire Healthchoice Assur., Inc., v. McVeigh,*[24] as well as the federal court decisions from Zyprexa-related litigation following these cases,[25] form the relevant backdrop for addressing the jurisdictional question. The Court finds, as discussed below, that there is no federal question jurisdiction in this case. In doing so, the Court notes a split of authority on this issue, and agrees, in part, with the reasoning of the *Pennsylvania v. Eli Lilly & Co., Inc.*[26] and *South Carolina v. Eli Lilly & Co.*[27] cases which have found there to be no federal question jurisdiction in cases nearly identical to this one.

### i. Actually Disputed and Substantial Federal Question

■ Defendant argues that a substantial question of federal law exists because Plaintiff's claims, especially that under Utah's False Claims Act, depend on the interpretation and application of federal Medicaid law. Defendant also argues that Plaintiff's Complaint makes violation of the Food Drug and Cosmetic Act ("FDCA") and Food and Drug Administration ("FDA") regulations critical elements of its claims.

**17.** *Garley v. Sandia Corp.,* 236 F.3d 1200, 1207 (10th Cir.2001).

**18.** *Pennsylvania,* 511 F.Supp.2d at 579, 2007 WL 1876531, at *2 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)).

**19.** *Empire,* 126 S.Ct. at 2137.

**20.** *Grable,* 545 U.S. at 308, 125 S.Ct. 2363.

**21.** *Id.* at 314, 125 S.Ct. 2363.

**22.** 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

**23.** 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257.

**24.** ―― U.S. ――, 126 S.Ct. 2121, 165 L.Ed.2d 131.

**25.** *See supra,* note 12.

**26.** *Pennsylvania,* 511 F.Supp.2d 576, 2007 WL 1876531.

**27.** *South Carolina,* No. 7:07–1875–HMH, Docket No. 16 (unpublished Order).

Plaintiff responds that the Utah law merely incorporates federal law and that such incorporation of a federal standard in a state law action does not implicate the substantial federal question doctrine. Plaintiff emphasizes that the allegations and causes of action in its Amended Complaint are centered in state law. Plaintiff also argues that Congress has instructed the states to pursue violations of Medicaid programs without providing a federal cause of action, thus intending such claims to be resolved under state law.

In order for a federal question to be significant or substantial, the federal issue must be "actually disputed, and essential to the adjudication of the plaintiff's claim."[28] For example, in the *Grable* case, the interpretation of a federal tax statute's notice provision was essential to the adjudication of the plaintiff's quiet title claim brought subsequent to an Internal Revenue Service ("IRS") property seizure to satisfy a federal tax delinquency.[29] Also, "[t]he absence of any federal cause of action ... is worth some consideration in the assessment of [and is evidence relevant to] substantiality."[30]

The Court finds that the Plaintiff's Complaint does not raise significant federal issues or turn on substantial questions of federal law. First, the Court finds that, to the extent a federal issue exists, it is not essential to the adjudication of the plain-

tiff's claims, particularly those focused upon by Defendant. For example, Plaintiff grounds its False Claims Act cause of action upon the following: (1) Defendant's facilitation of Medicaid claims that were not "medically necessary" in violation of UAC R414–1–2(18) (as defined under Utah law); (2) Defendant's facilitation of claims for non-"medically accepted indications" per 42 U.S.C.A. § 1396r–8(k)(3) (as defined under Federal law); and (3) Defendant's facilitation of claims for "experimental, investigational, and unproven medical practices" in violation of UAC R414–1A–3 (as defined under Utah law).[31] Given these multiple bases, resolution of this claim does not hinge solely on a federal question. Inasmuch as Defendant attempts to establish that Plaintiff was, and continues to be, solely responsible for the amounts underlying the Medicaid claims at issue, Defendant asserts a defense which raises a federal question, and such is inadequate to confer federal jurisdiction.[32]

Second, and relevant to all of the claims which Defendant addresses, "the mere presence of a federal standard embedded in a state law cause of action is not sufficient to warrant federal subject matter jurisdiction where there is no federal remedy for a violation of the federal statute."[33] The law set forth by the *Merrell Dow* case in this respect was specifically affirmed by the Supreme Court in the *Grable* case.[34]

**28.** *Pennsylvania*, 511 F.Supp.2d at 580, 2007 WL 1876531, at *3 (citing *Grable*, 545 U.S. at 313, 125 S.Ct. 2363).

**29.** *Grable*, 545 U.S. at 315, 125 S.Ct. 2363.

**30.** *Id.* at 318, 125 S.Ct. 2363.

**31.** Amended Complaint, at 3–4.

**32.** *Merrell Dow*, 478 U.S. at 808, 106 S.Ct. 3229.

**33.** *Pennsylvania*, 511 F.Supp.2d at 584–85, 2007 WL 1876531, at *7 (citing *Merrell Dow*,

478 at 810–14, 106 S.Ct. 3229); *see also Grable*, 545 U.S. at 318, 125 S.Ct. 2363.

**34.** *Id.* (citing *Grable*, 545 U.S. at 318, 125 S.Ct. 2363 ("*Merrell Dow*" should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires.... The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attract-

Third, the Court finds that congressional intent as to the relevant statutes is important here, and indicates that an exercise of federal jurisdiction would not be proper in this action.[35] The *Grable* case clarified that the absence of a federal remedy was relevant evidence as to, but not dispositive of, judgments of congressional intent relevant to ascertaining jurisdiction, especially where a the state law cause of action was unlikely to find its way to the federal courts in the future, and where there was precedent for the exercise of federal jurisdiction over the specific claim.[36] The *Empire* case, declining to extend *Grable,* reaffirmed the importance of a federal court's responsibility to look for some indication that Congress intended the exercise of federal jurisdiction over claims "ordinarily resolved in state courts," and specifically noted that the category established by *Grable* was "slim." [37]

> As the Supreme Court emphasized in *Empire,* "[f]ederal courts should await a clear signal from Congress before treating such auxiliary claims as 'arising under' the laws of the United States." There is no meaningful indication that Congress intended to confer federal jurisdiction over state law causes of actions implicating the federal statutes involved here, namely, the FDCA and Title XIX of the Social Security Act ... which is the federal leg-

islation establishing the Medicaid program.[38]

The absence of any signal by Congress is especially important here where Congress has specifically required states to seek reimbursement from legally liable third parties,[39] but has provided no federal cause of action to do so.

The Court further notes that this action is distinguishable from *Grable* in several respects, as highlighted by the *Empire* case. In the *Empire* case, a health insurance carrier for federal employees brought suit seeking reimbursement of benefits on the ground that the enrollee had recovered damages for his injuries in a state court action.[40] There, in finding a lack of subject matter jurisdiction, the Court distinguished *Grable,* and stated that the federal issue in *Grable* was the only contested issue in that case, that the claim in *Empire* was not triggered by a federal agency's action, and that *Grable* involved a nearly pure issue of law, and not a fact-bound and situation-specific scenario.[41] The Court notes that this action is similarly distinguishable from the *Grable* case on the same, or similar grounds. For example, Plaintiff's causes of action are not solely hinged on federal issues, and, by their nature, are necessarily fact-bound. Additionally, there is no federal agency action here and "the fact that a federally created program, Medicaid, serves as the initial source of the funds [Plaintiff] seeks to recover does not, without more, confer federal jurisdiction." [42]

---

ed a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action.)).

**35.** *See Grable,* 545 U.S. at 318, 125 S.Ct. 2363 (noting overlap between substantiality and congressional intent).

**36.** *Id.* at 318–20, 125 S.Ct. 2363.

**37.** *Empire,* 126 S.Ct. at 2137.

**38.** *Pennsylvania,* 511 F.Supp.2d at 585, 2007 WL 1876531, at *7.

**39.** *See* 42 U.S.C. § 1396a(a)(25).

**40.** *Empire,* 126 S.Ct. at 2137.

**41.** *Id.*

**42.** *Pennsylvania,* 511 F.Supp.2d at 585, 2007 WL 1876531, at *7 (citing *Commonwealth of Massachusetts v. Philip Morris, Inc.,* 942 F.Supp. 690, 694 (D.Mass.1996) and *Gingerich v. White Pigeon Comty. Sch.,* 736 F.Supp. 147 (W.D.Mich.1990)).

Finally, the Court acknowledges the recent Tenth Circuit case of *Nicodemus v. Union Pacific Corp.*,[43] which found that a substantial federal question jurisdiction existed under *Grable*, where at least one of Plaintiff's causes of action hinged on the resolution of a federal issue, namely, federal railroad rights-of-way and land grants. However, in that case, the Tenth Circuit specifically noted that a considerable federal interest existed in that the underlying statutes were designed to "'secure the safe and speedy transportation of the mails, troops, munitions of war, and the public stores' to the West," and that the absence of a federal cause of action was not dispositive, "especially since Congress did not grant to federal courts original jurisdiction over federal-question cases until 1875." [44]

This case is distinguishable from *Nicodemus*. As discussed above, no causes of action here hinge entirely on the resolution of a federal issue. Moreover, the State's interest in obtaining reimbursements for Medicaid payments is not tantamount to the federal government's interest as stated in *Nicodemus*. Finally, the importance of the absence of a federal cause of action, or other signal from Congress which would indicate to the Court an intent for federal courts to exercise jurisdiction over this type of claim, is greater here where the Medicaid-related statutes are considerably more recent than the statutes addressed in *Nicodemus*.

ii. Disturbance of Congressionally Approved Balance of Federal and State Judicial Responsibilities

■ Defendant argues that federal jurisdiction here would not upset the balance of federal and state judicial responsibilities. Defendant emphasizes that a specific federal right of action is not required for a finding of federal jurisdiction. Defendant also argues that a federal suit by only one of fifty states does not open the door to a horde of lawsuits which would work a major change in the federal-state division of judicial labor.

Plaintiff argues that removal upsets the balance of federal and state judicial responsibilities, in part, because Congress has instructed the states to pursue violations of Medicaid programs without providing a federal cause of action, and thus intended that such claims be resolved under state law.

> Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction.[45]

The Court finds that an exercise of federal jurisdiction here would disturb the congressionally approved balance of federal and state judicial responsibilities. This conclusion is supported by the above finding addressing the significance of the absence of a federal cause of action in this case, and other indications of congressional intent as to the relevant statutes, as well as the lack of preemption of state remedies, discussed below.[46] The Court also acknowledges that jurisdiction here would not, as the *Grable* and *Merrell Dow* cases found significant, attract a "horde" of original filings.[47] However, other consider-

---

**43.** 440 F.3d 1227, 1233 (10th Cir.2006).

**44.** *Id.* at 1236–37.

**45.** *Grable*, 545 U.S. at 314, 125 S.Ct. 2363.

**46.** *See id.* (noting importance of finding of absence of federal action in connection with absence of preemption).

**47.** *See id.* at 318–20, 125 S.Ct. 2363 (discussing *Merrell Dow* ).

ations support that finding jurisdiction would upset the congressionally approved balance of federal and state judicial responsibilities. For example, it is presumed that Congress is thoroughly familiar with federal court precedents, and that it expects its enactments to be interpreted in conformity with them.[48] Significantly, the Supreme Court itself has stated that "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it."[49] No such clear rule exists here in the context of recovery of Medicaid funds.

Finally, the Court notes that, in addition to the above findings, the split of authority on the issue of federal question jurisdiction in this type of action is itself is sufficient to establish a "doubtful case" which requires this Court to remand in the absence of some other ground for exercise of jurisdiction.

### 2. Preemption

■ Defendant argues that Plaintiff's allegations of off-label promotion and failure to warn are preempted by FDA regulation. Defendant cites to a new FDA rule which indicates that it preempts most state law claims related to the adequacy of prescription drug warnings.[50] Defendant cites no case law in support of its argument.

Plaintiff correctly cites authority establishing that the FDA's rule is not proper authority on the issue of preemption,[51] and that the FDCA does not preempt state common law causes of action here.[52]

"In fields traditionally occupied by the states, such as health and safety regulation, there is a strong presumption against federal preemption."[53] Defendant has not overcome this strong presumption and the Court finds that federal question jurisdiction does not lie based on preemption. Absent any other basis for asserting subject matter jurisdiction in this action, the Court will grant Plaintiff's Motion to Remand.

### III. CONCLUSION

For the foregoing reasons, it is therefore

ORDERED that Defendant's Motion to Stay (Docket No. 2) is DENIED. It is further

ORDERED that Plaintiff's Motion to Remand (Docket No. 6) is GRANTED. The Clerk of the Court shall remand this action and close this case forthwith.

---

**48.** *E.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

**49.** *Franchise Tax Bd of State of Cal. v. Constr. Laborers Vacation,* 463 U.S. 1, 22 n. 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

**50.** *Requirements on Content and Format of Labeling for Human Prescription Drug and Biologic Products,* 71 Fed.Reg. 3922, 3934–35 (2006).

**51.** *In re Vioxx Products Liability Litig.,* 501 F.Supp.2d 776, 786–87 (E.D.La.2007).

**52.** *See* Docket No. 16, at 9–10 (listing authority determining that FDCA does not pre-empt state law claims).

**53.** *In re Zyprexa Prods. Liab. Litig.,* 489 F.Supp.2d 230, 272 (E.D.N.Y.2007).